110 F.3d 63
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Muhammad ABDUR-RAHMAN, Plaintiff-Appellant,
v.
William MEYER and Darrell Henry, Defendants-Appellees.
 No. 95-2321.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1997.
 
 Before: JONES, SUHRHEINRICH, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Muhammad Abdur-Rahman, appeals the district court's grant of a directed verdict to defendants, William Meyers and Darrell Henry.[1] Specifically, Abdur-Rahman argues that Meyers and Henry retaliated against him for exercising his First Amendment rights. For the following reasons, the court REVERSES and REMANDS this case for proceedings in accordance with this opinion.
 
 I. BACKGROUND
 
 2
 Abdur-Rahman is an inmate at the Michigan prison facility in Jackson. On April 11, 1993, he was assigned to work in the prison kitchen. Meyers and Henry were kitchen stewards at the prison. In May or June 1993, Abdur-Rahman was promoted to the position of foreman. His primary duty was to place food on food trays.
 
 
 3
 Meyers was one of Abdur-Rahman's immediate supervisors on the food tray line. In mid-June, Abdur-Rahman began to complain about his failure to receive his monthly bonus payment.[2] He took his grievance to Meyers, who referred him to Henry. Henry gave Abdur-Rahman a form to complete regarding his complaint. When Abdur-Rahman failed to hear from the kitchen staff or receive any information regarding his grievance, he wrote to the warden and deputy warden about his failure to receive his bonus payment. Throughout the month of July, Abdur-Rahman continued to complain about his wages to Meyers and Henry.
 
 
 4
 During July and August, Abdur-Rahman alleges that Meyers and Henry began to treat him in an openly hostile and antagonistic manner. When he requested food for the food trays that was locked in storage, Meyers ignored him. He testified that, because the other prisoners in the kitchen did not complain, the defendants were upset with him because he made too many inquiries. The defendants subsequently informed the other inmates working on the food line that Abdur-Rahman's job as foreman was to be reassigned to another prisoner. Abdur-Rahman testified that this news created hostility and competition among the prisoners working with him because the wage for the foreman position was considerably higher than that for other positions.[3]
 
 
 5
 On September 1, 1993, after preparing the food trays, Abdur-Rahman left the kitchen by way of a double-door exit constructed of transparent glass. He saw Meyers and Henry talking through the doors and stopped to listen to their conversation. He alleges that he heard Henry instruct Meyers to write Abdur-Rahman a misconduct charge for theft.
 
 
 6
 After this incident, Meyers informed Abdur-Rahman that he was temporarily suspended from his job, pending the outcome of a major misconduct charge for theft. The defendants claimed that Abdur-Rahman stole some cheese, which was later found in the back pocket of his kitchen whites.[4] On September 21, 1993, Abdur-Rahman appeared before Director Louis Upchurch, who informed him of the charge. Abdur-Rahman told Director Upchurch that he never received formal notice or a copy of the charge. The director determined that Abdur-Rahman had not been found guilty of the misconduct charge and that he had never been heard on it. Because Abdur-Rahman stated that he was having problems with his supervisors, Director Upchurch recommended that he be placed in a different labor pool for another work assignment.
 
 II. DISCUSSION
 
 7
 The district court presided over a two-day trial of Abdur-Rahman's allegations against Meyers and Henry. After Abdur-Rahman presented his case, the defendants moved for a directed verdict on Abdur-Rahman's First Amendment claim of retaliation. Relying on Connick v. Meyers, 461 U.S. 183 (1983), and Rice v. Ohio Dep't of Transportation, 887 F.2d 716 (6th Cir.1989), the court found that Abdur-Rahman's speech concerning his work did not pertain to a matter of public concern.[5] Thereafter, the court directed a verdict in favor of Meyers and Henry.
 
 
 8
 In granting the defendants' motion for a directed verdict, the district court made the following statements:
 
 
 9
 I think there's no question that there's no constitutional violation based upon the record made in this case. I think Connick versus Meyers[,] 461 United States 183, is a case that's very much on point.
 
 
 10
 This, of course was not a prison case, but it was a public employee who contended that her [F]irst [A]mendment rights to free speech, redress, grievance had been retaliated against her by terminating her employment. And the court held that:
 
 
 11
 We hold that when a public employee speaks not as a citizen upon matters of public concern, but, instead, is an employee upon matters of personal interest absent the most unusual circumstances [sic]. The federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by public agency. Our responsibility is to ensure the * * by virtue of working for the government [sic]. This does not require grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state.
 
 
 12
 And I think clearly that is applicable here. I also think the Sixth Circuit in Rice versus Ohio Transportation, 887 F.2d 716 spoke directly on the point where it said we're called upon here and in this case this was a denial of a promotion for retaliation for having filed a prior grievance claim[ ] for reverse sex discrimination.
 
 
 13
 There was a First Amendment claim there and the Sixth Circuit said:
 
 
 14
 We're called upon here to decide whether the First Amendment itself, as made applicable to the states by the the [sic] Fourteenth Amendment, prohibits the withholding of promotion and retaliation for filing an employment discrimination charge against the governmental employee.
 
 
 15
 The threshold question in such cases is whether the speech involves a matter of public concern. If the speech does not involve a matter of public concern, it is not--it is unnecessary for us to scrutinize a government employment decision. Not every job related grievance of a public employee is a matter of public concern.
 
 
 16
 I think we have here basically and only a job related grievance. I don't think it rises to the standard of a constitutional depr[i]vation.... [S]o I will grant the motion for directed verdict, the judgment as a matter of law.
 
 
 17
 Contrary to the district court's holding, retaliation against the exercise of First Amendment rights is itself a violation of the First Amendment. Zilich v. Longo, 34 F.3d 359, 364 (6th Cir.1994), cert. denied, 115 S.Ct. 1400 (1995). A prisoner states a substantive due process claim if he alleges that a guard has retaliated against him for having exercised his First Amendment rights. Cale v. Johnson, 861 F.2d 943, 950-51 (6th Cir.1988). Issuing a false misconduct charge may amount to a substantive due process violation if it constitutes an "egregious abuse of governmental power." See id. at 950. In Cale, the plaintiff claimed that a prison official framed him and filed false disciplinary charges against him in retaliation for his exercise of his First Amendment right to register a complaint about the food. This court found that such conduct constituted an egregious abuse of governmental authority. Id. at 950-51. Similarly, in the instant case, Abdur-Rahman alleges that Meyers and Henry framed him and filed a false major misconduct charge against him in retaliation for his complaints regarding payment of wages.
 
 
 18
 Accordingly, if Abdur-Rahman can show that Meyers and Henry acted in retaliation for his complaints by wrongfully initiating disciplinary procedures against him, then Abdur-Rahman has a cause of action under 42 U.S.C. § 1983.[6] The district court, therefore, erred by directing the verdict in favor of Meyers and Henry because Abdur-Rahman proved a substantive due process claim. Defendants also argue that Abdur-Rahman suffered no punishment as a result of the alleged retaliation. If that is correct, then Abdur-Rahman may lose because of that fault in his case. See Franco v. Kelly, 854 F.2d 584, 590 (2d Cir.1988). Defendants allege in their brief that the district court found Abdur-Rahman suffered no punishment from the retaliation because Upchurch ordered that his backpay be restored. However, they have not cited to a place in the Appendix where it can be found.
 
 
 19
 Because the district court ruled in favor of the defendants on another ground, that is, the retaliation issue, we remand for the court to determine if Abdur-Rahman suffered any damages as a result of the retaliation. If he did, then the case must be retried; if not, the judgment should again be entered against Abdur-Rahman.
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 The complaint incorrectly lists William Meyers as "William Meyer."
 
 
 [2]
 Apparently, an inmate was entitled to a bonus if, after working 60 days, he received a monthly evaluation of at least 35 points
 
 
 [3]
 When Abdur-Rahman started his kitchen job, he earned 17 1/2 cents per hour. As a foreman, he earned 32 cents per hour. With the monthly bonus, a foreman could make $90.00 a month
 
 
 [4]
 Kitchen whites are smock-like uniforms that prisoners working in the kitchen are required to wear. Cheese was kept locked in the coolers. The defendants claim that Abdur-Rahman stole 40 slices of cheese
 
 
 [5]
 The Supreme Court remanded Rice for reconsideration in light of Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). Rice v. Ohio Dep't of Transportation, 497 U.S. 1001 (1990). Rutan concerned issues not pertinent to the case at hand
 
 
 [6]
 Meyers and Henry argue that Abdur-Rahman did not have a constitutional right to his position as a foreman. Abdur-Rahman, however, need not show that the retaliatory action itself amounted to a constitutional violation, just that the action was taken in retaliation for the plaintiff's exercise of his or her constitutionally protected rights. See Crocker v. Tennessee Secondary School Athletic Ass'n, 980 F.2d 382, 387 (6th Cir.1992) ("[A]n otherwise lawful act is actionable when taken in retaliation for the exercise of a constitutional right.")